**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | § | |
| **OPPORTUNITY COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:13-CV-2871** |
| | § | |
| **UNITED BIBLE FELLOWSHIP** | § | |
| **MINISTRIES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>O R D E R</u>

Pending before the Court is Defendant United Bible Fellowship Ministries, Inc. ("Defendant," or "United Bible")'s motion for summary judgment (**Instrument No. 11**), Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff" or "EEOC")'s motion for partial summary judgment (**Instrument No. 12**), Defendant's motion to strike Plaintiff's Exhibit P attached to Plaintiff's Response to Defendant's Motion for Summary Judgment. (**Instrument No. 16**).

### I.

### A.

On September 30, 2013, Plaintiff EEOC filed suit against Defendant United Bible Fellowship Ministries, Inc. in the United States District Court for the Southern District of Texas, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 for employment discrimination on the basis of sex and pregnancy. (Instrument No. 1 at 1-4). Plaintiff alleges that

Defendant is liable to Sharmira Johnson ("Johnson") and other female employees of Defendant who were terminated from employment because of their pregnancies under Defendant's unlawful "Pregnancy in the Workplace Policy." (Instrument No. 1 at 1-4).   Plaintiff seeks a permanent injunction against Defendant's alleged termination of employees on the basis of pregnancy or sex, back pay with interest and compensation for past and future pecuniary and nonpecuniary losses for Sharmira Johnson and other adversely affected pregnant employees of Defendant, and punitive damages. (Instrument No. 1 at 5-6). Defendant filed its first amended answer and affirmative defenses on February 14, 2014. (Instrument No. 10).

On January 5, 2015, Defendant filed a motion for summary judgment on all claims. (Instrument No. 11). On January 26, 2015, Plaintiff filed a response in opposition. (Instrument No. 14). On February 2, 2015, Defendants filed a reply and a motion to strike Plaintiff's Exhibit P attached to Plaintiff's response. (Instrument No. 16). On February 6, 2015, Plaintiff filed its sur-reply to Defendant's reply and motion to strike Exhibit P. (Instrument No. 19). On February 14, 2014, Defendant filed its first amended answer, including the following 19 affirmative and other defenses:

> "First Defense: Plaintiff's Original Complaint should be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.
> Second Defense: The employment actions about which Plaintiff complains were taken for a legitimate, non-discriminatory business reason, and not due to Johnson's sex or pregnancy."
> Third Defense: Johnson's sex or pregnancy was not a motivating factor for any of United Bible's alleged actions or omissions, but instead any employment actions about which Plaintiff complains would have been necessary in the absence of any impermissible factors.
> Fourth Defense: Johnson was an at-will employee, ,as that term is defined under the common law of Texas, and she could be terminated at any time for any reason not specifically prohibited by state or federal law, and with or without cause.
> Fifth Defense: United Bible is not liable for any acts, if any, by employees who were not authorized by it who had no express or implied authority to engage

in acts that were inconsistent with United Bible's written rules prohibiting conduct constituting unlawful discrimination.

Sixth Defense: Any improper acts, if any, by certain individuals employed by or associated with United Bible were beyond the course and scope of employment and it is not responsible for those actions.

Seventh Defense: United Bible has widely disseminated anti-discrimination policies upon which its employees are educated.

Eighth Defense: United Bible exercised reasonable care to prevent and promptly correct any alleged discrimination from occurring and Johnson failed to take advantage of any preventative or corrective opportunities or otherwise failed to avoid the alleged harm.

Ninth Defense: United Bible did not know, nor should have know [sic], of the alleged discriminatory conduct.

Tenth Defense: To the extent Johnson's claims and allegations exceed the reasonable scope and investigation of the Charge that she filed with the EEOC and/or the Texas Workforce Commission, such claims and allegations are barred.

Eleventh Defense: To the extent United Bible discriminated against Johnson or other females within the protected class on the basis of sex and/or pregnancy, the discrimination falls under a business necessity and/or bonafide occupational qualification ("BFOQ").

Twelfth Defense: United Bible is not an employer that falls under Title VII as amended.

Thirteenth Defense: Johnson failed to mitigate her damages. United Bible is entitled to an offset for any amounts Johnson earned or should have earned.

Fourteenth Defense: To the extent Johnson claims that the termination of employment caused her to miscarry, there is no direct causal connection and/or a preexisting condition supersedes any damages that may flow from the termination.

Fifteenth Defense: Johnson cannot show adverse action because she resigned and was not terminated.

Sixteenth Defense: Johnson and/or Plaintiff cannot recover punitive damages for any alleged discrimination because any such alleged discrimination would be contrary to United Bible's good faith efforts to comply with laws governing such conduct.

Seventeenth Defense: Plaintiff and Johnson's claims for punitive and/or exemplary damages are unconstitutional and unavailable.

Eighteenth Defense: Plaintiff and Johnson's claims for actual, punitive and/or exemplary damages, and other relief are subject to all applicable statutory caps and limitations.

Nineteenth Defense: United Bible hereby give [sic] notice that it may rely upon other defenses or affirmative defenses of which it becomes aware of [sic] during discovery in this case and hereby reserves the right to amend this answer to assert any such defense."

(Instrument No. 10).

On January 5, 2015, Plaintiff filed a motion for partial summary judgment on fourteen of Defendant's affirmative defenses. (Instrument No. 12). On January 26, 2015, Defendant filed its response to Plaintiff's motion for partial summary judgment (Instrument No. 13), and Plaintiff filed its reply on February 2, 2015. (Instrument No. 17).

## B.

Defendant United Bible is a 501(c)(3) non-profit organization incorporated in Texas in 2001 originally as a church. (Instrument No. 11 at 8; No. 14 at 6-10). For a period in 2004, Defendant expanded its services to include Home and Community-Based Services ("HCS Program"), which offered a variety of residential and community services to "clients" with physical and/or mental disabilities. (Instrument No. 14 at 6). Defendant operated "Day Habilitation" centers where clients received services including life skills, socialization, and vocational training. (*Id.*). Defendant also operated group homes where up to three clients would live on a long-term basis, and where Defendant employed Sharmira Johnson and Casey Newton, at different times, as Resource Technicians. (Instrument No. 14 at 6; No. 11 at 10). Resource Technicians were caregivers paid at the rate of $8/hour and who assisted clients with daily living skills, cooking, cleaning, bathing, walking, standing, eating, grooming, housekeeping, laundry, and administering medications. (Instrument No. 14 at 7; No. 11 at 10). Resource Technicians were at times required to bend, lift, push, and pull heavy items. Some residents also had a history of aggression and/or abusive tendencies and Resource Technicians were trained and required to de-escalate the situation. (Instrument No. 14 at 7; No. 11 at 10). Each Resource Technician worked alone for 8-hour shifts from 4 p.m. to 12 a.m. or from 12 a.m. to 8 a.m. (Instrument No. 11 at 10).

Defendant employed Sharmira Johnson in November 2010 as a Resource Technician, and she worked the overnight 12 a.m. to 8 a.m. shift on weekdays. (Instrument No. 14 at 7; No. 11 at 10-11). Plaintiff alleges that Johnson's primary duty during these shifts was heavy cleaning of the home, including sweeping behind appliances and cleaning the oven. (Instrument No. 14 at 7). On March 1, 2011, Johnson had a tubal ligation reversal surgery, and her doctor ordered that she be on bed rest and light duty for two weeks to recover from surgery. (Instrument No. 11 at 11; No. 14 at 8). Johnson's doctor provided a note recommending that she be put on light duty with no heavy lifting for two weeks upon returning to work. (Instrument No. 11 at 11; No. 14 at 8). Delores Moss, Defendant's HCS Program Director, placed Johnson on short-term unpaid leave for two weeks because Defendant was unable to accommodate Johnson's light-duty restriction. (Instrument No. 11 at 11; No. 14 at 8). Johnson returned to work on March 23, 2011 and resumed her full duties without incident, working 57.1 hours during the first pay period from April 1st to 15th, 2011. (Instrument No. 11 at 11; No. 14 at 8).

Plaintiff alleges that on April 3, 2011 Johnson took a pregnancy test and learned that she was pregnant. (Instrument No. 14 at 8). Plaintiff alleges that on April 11, 2011, Johnson confirmed the positive pregnancy test at a clinic and received a Report of Pregnancy document from her doctor, which indicated that Johnson could work during her pregnancy without any physical restrictions. (Instrument No. 14 at 8). Plaintiff alleges that Johnson's Report of Pregnancy stated that she did not need to be exempt from working. (Instrument No. 14 at 8). On April 12, 2011, Johnson brought the Report of Pregnancy to Program Director Moss. (Instrument No. 14 at 8; No. 11 at 11). Plaintiff alleges that Moss received the document and conferred with Defendant's Human Resources Manager Madeline Glass to terminate Johnson from her position due to her pregnancy. (Instrument No. 14 at 8). Johnson was immediately "relieved of duty" on

April 12, 2011, and received a "Relief of Duty Memo" from Defendant, which states in relevant part:

> "On today we spoke in regards to your employment status with United Bible Fellowship Ministries due to your recently discovered pregnancy. In accordance with the Policy of Pregnancy in the Workplace you understand that you will be relieved of duty pending your pregnancy and that upon your delivery you will be eligible for rehire for any direct care position that we have available at that time."

(Instrument No. 14 at 9). In contrast, Defendant alleges that the Report of Pregnancy stated that Johnson became pregnant on March 9, 2011, or approximately a week before she was placed on leave for light duty and other work restrictions. (Instrument No. 11 at 11).

On April 14, 2011, two days after her termination, Johnson miscarried. (Instrument No. 11 at 12; No. 14 at 9). Plaintiff alleges that Johnson experienced a period of heavy grief, yet she began to search for a new job out of necessity. Defendant alleges that Johnson applied for unemployment benefits on or before April 14, 2011 and received unemployment benefits as early as May 6, 2011. (Instrument No. 11 at 12). Plaintiff alleges that Resource Technician Casey Newton was also "relieved of duty" pursuant to Defendant's Pregnancy in the Workplace policy after Defendant discovered that Newton was pregnant. (Instrument No. 14 at 9). Johnson filed an EEOC charge of discrimination against Defendant on May 10, 2011. Defendant alleges that during the EEOC's investigation in June 2011, Defendant removed its Pregnancy in the Workplace policy and offered to reinstate Johnson to her previous position. (Instrument No. 11 at 12). Defendant's HCS Program no longer exists today, but Defendant continues to operate its church with approximately 65 general church members. (Instrument No. 11 at 9).

On September 30, 2013, Plaintiff brought suit against Defendant United Bible, seeking a permanent injunction and damages for Defendant's violation of Title VII of the Civil Rights Act of 1964. (Instrument No. 1). Defendant filed its first amended answer and affirmative defenses on February 14, 2014. (Instrument No. 10).

## II.

As a preliminary matter, Defendant moved to strike Plaintiff's Exhibit P, attached to Plaintiff's response to Defendant's motion for summary Judgment. (Instrument No. 16). Defendant asserts that Plaintiff's Exhibit P is inadmissible hearsay and also has not been properly authenticated by anyone on behalf of the Department of Aging and Disability Services ("DADS"). (Instrument No. 16 at 4). Defendant also objects because this evidence was not provided during discovery when Plaintiff was asked to produce documents that supported its claims. (*Id.*). In response, Plaintiff asserts that Exhibit P is an admissible as a public record and is self-authenticating as an official government publication under Federal Evidence Rule 803(8). (Instrument No. 19 at 1-2).

On a motion for summary judgment, "the admissibility of evidence . . . is subject to the usual rules relating to form and admissibility of evidence." *Munoz v. Int'l Alliance of Theatrical Stage Emps. & Moving Picture Mach. Operators of U.S. & Can.*, 563 F.2d 205, 213 (5th Cir. 1977). The non-moving party "may object that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The hearsay rules as prescribed by Federal Rules of Evidence 801 and 802 apply with equal force in the summary judgment context. *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006). Furthermore, conclusory statements, unsubstantiated and subjective beliefs, and speculative statements are not

proper summary judgment evidence. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

In this case, Plaintiff's Exhibit P purports to be a list of "DADS Contracts of $100,000 and More as of September 19, 2014," listed publicly pursuant to Texas Government Code, Chapter 2054, Section 2054.126(d). (Instrument No. 14-16). The document lists "United Bible Fellowship Ministries, Inc." as receiving two DADS contracts for "Home and Community-Based Services" as of September 19, 2014. (*Id.*). Plaintiff alleges that it found this document on the DADS website and has provided the public URL. (*Id.*). Federal Rule of Evidence 803(8) provides that "a record or statement of a public office" is not excluded as hearsay if "it sets out. . . a matter observed while under a legal duty to report. . . and neither the source of the information nor other circumstances indicate a lack of trustworthiness." In this case, DADS is a public agency under a legal duty to report all DADS contracts of $100,000 or more, and its website is maintained by the agency. (Instrument No. 19 at 1-2). As Defendants have submitted no basis for the document's lack of trustworthiness, the Court finds that Plaintiff's Exhibit P is a public record and should not be excluded as hearsay. *See* FED. R. EVID. 803(8). Additionally, Federal Rule of Evidence 902(5) provides that a "book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating and requires no extrinsic evidence of authenticity in order to be admitted. FED. R. EVID. 902(5). In this case, Exhibit P is a document found on the DADS public website and purports to be electronically published by DADS in its public authority and as required by state law. (Instrument No. 14-16). Therefore, this Court finds that Plaintiff's Exhibit P falls under the public records exception to hearsay and is self-authenticating. *See* FED. R. EVID. 803(8); FED. R. EVID. 902(5).

Therefore, Defendant's motion to strike Plaintiff's Exhibit P in Plaintiff's response to Defendant's motion for summary judgment is DENIED. (Instrument No. 16).

### III.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25(1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's

response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (*quoting Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the District Court does not make credibility determinations or weigh evidence. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009). Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas,* 136 F.3d at 458; *Nissho-*

*Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## IV.

Plaintiff brings claims for sex discrimination under Title VII of the Civil Rights Act of 1964. (Instrument No. 1). Plaintiff EEOC has filed for summary judgment on fourteen of Defendant's affirmative defenses. (Instrument No. 12). Defendant has filed for summary judgment on all claims. (Instrument No. 11).

## A.

As a threshold issue, the Court first reviews whether Defendant United Bible is an "employer" within the meaning of Title VII. Defendant moves for summary judgment on the grounds that Plaintiff's Title VII claims are not applicable because United Bible is not an employer and is not engaged in an industry affecting commerce. (Instrument No. 11 at 14-19). Plaintiff also moves for summary judgment on this issue, primarily asserting that Defendant received federal Medicaid funds and operated group homes that were part of a larger medical services/assisted care industry that affects interstate commerce. (Instrument No. 17 at 4-5).

Title VII only applies to employers, which includes organizations or persons "engaged in an industry affecting commerce" and who had fifteen or more employees for each working day in

each of twenty or more calendar weeks in the current or preceding calendar year. 42 U.S.C. § 2000e(b); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504-05 (2006); *Grant v. Lone Star Co.*, 21 F.3d 649, 651 (5th Cir. 1994). Defendant does not dispute that it had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Defendant only disputes that it is engaged in an industry affecting commerce. An industry affecting commerce is "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry affecting commerce within the meaning of the Labor-Management Reporting and Disclosure Act of 1959 [(LMRDA)][29 U.S.C. § 401 et seq.]." 42 U.S.C. § 2000e(h). Commerce is defined as "trade, traffic, commerce, transportation, transmission, or communication among the several States, or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof." 42 U.S.C. § 2000e(g). The Fifth Circuit has held that the "affecting commerce" requirement is "to be construed liberally to effectuate and maximize the remedial purpose of Title VII." *See, e.g.*, *E.E.O.C. v. Ass'n of Cmty. Organizations For Reform Now*, 83 F.3d 418 (5th Cir. 1996); *Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir. 1990); *NLRB v. Lighthouse for the Blind,* 696 F.2d 399, 404 n. 21 (5th Cir. 1983); *McClure v. Salvation Army,* 460 F.2d 553, 557 (5th Cir.), *cert. denied,* 409 U.S. 896 (1972); *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir. 1980); *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957(1972). In particular, the Fifth Circuit has held that establishing an economic activity to affect interstate commerce requires passing only a "very low" bar. *See, e.g.*, *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 330-31 (5th Cir. 2012); *United States v. Runyan,* 290 F.3d 223,

239 (5th Cir. 2002) (holding that the transmission of child pornography via the Internet constitutes transportation through interstate commerce), *cert. denied*, 537 U.S. 888 (2002).

In this case, Defendant asserts that as a faith-based non-profit organization that did not serve persons outside of Texas or solicit out-of-state funds, it is not an industry engaged in commerce and cannot be construed as an employer under Title VII. (Instrument No. 11 at 14). Defendant also asserts that it was not registered in any other state, trains all employees locally and does not pay for employee travel, does not require its members to solicit, and was not connected with any larger or national organization. (Instrument No. 11 at 17-19). Defendant additionally denies receiving any federal funds and maintains that it was fully funded through the DADS. (Instrument No. 11 at 14). However, federal and state governments jointly fund Medicaid to provide medical assistance and services to low income individuals in need. 42 U.S.C. § 1396d(a). Indeed, Defendant was funded by DADS using federal and state Medicaid funds, and Defendant necessarily received federal funds. Thus, Defendant's essential business relationships within the medical services and assisted care industry "affected commerce" and renders Defendant an employer under Title VII. *See E.E.O.C. v. Ass'n of Cmty.; Organizations For Reform Now*, 83 F.3d 418 (5th Cir. 1996); *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990); *NLRB v. Lighthouse for the Blind*, 696 F.2d 399, 404 n. 21 (5th Cir. 1983).

Plaintiff asserts that although United Bible is a local non-profit enterprise, it provided social and educational services and assisted care to disabled individuals, and was therefore part of a larger medical services/assisted care industry that affects interstate commerce. (Instrument No. 17 at 4). It is undisputed that Defendant offered a full spectrum of residential educational and social services for individuals with disabilities, and that Defendant's employees worked with a variety of health care specialists including nurses, doctors, psychologists, and service

coordinators. (Instrument No. 17-4 at 4-7). As such, the Court finds that Defendant's nexus with interstate commerce is sufficient to establish Title VII applicability, particularly under the Fifth Circuit's liberal construction of the term "affecting commerce." *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 331 (5th Cir. 2012) (holding that defendant's internet advertisements with potential or intent to draw residents of other states to Texas in search of employment is enough to clear the "very low" bar that defines "economic activity affecting interstate commerce."). Because Defendant's HCS enterprise would not exist but for its interactions and transactions with a host of third-party individuals and companies, and those third-party entities generally impact commerce, this Court finds that Defendant's group-home enterprise includes activities within an industry affecting commerce. *See* 42 U.S.C. § 2000e(b); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504-05 (2006).

In its motion for summary judgment, Defendant cites multiple cases, including unpublished cases, from the Northern District of Illinois and the Third Circuit Court of Appeals, which do not fall under the Fifth Circuit's instruction to liberally construe the term "employer." (Instrument No. 11). *See, e.g.*, *Graves v. Methodist Youth Services, Inc.*, 624 F.Supp 429 (N.D. Ill. 1985); *Vasquez v. Visions, Inc.*, 2002 U.S. Dist. LEXIS 1091 (N. D. Ill. Jan. 24, 2002); *Johnson v. Alternatives, Inc.*, 2002 U.S. Dist. LEXIS 15667 (N. D. Ill. Aug. 20, 2002). After drawing all reasonable inferences in the light most favorable to Plaintiff, this Court finds that Defendant's contractual relationships with health care specialists and service organization generally engaged in interstate commerce is sufficient to satisfy the liberal construction of "employer" in the Fifth Circuit. *See E.E.O.C. v. Ass'n of Cmty. Organizations For Reform Now*, 83 F.3d 418 (5th Cir. 1996); *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990). Defendant's group-home enterprise provided vocational training and residential services, which are activities within an industry that

regularly impacts interstate commerce. *See E.E.O.C. v. Ass'n of Cmty. Organizations for Reform Now*, 83 F.3d 418; *Harvey v. Blake*, 913 F.2d 226.

Accordingly, Defendant's motion for summary judgment as to the applicability of Title VII is DENIED. (Instrument No. 11). Plaintiff's motion for partial summary judgment as to Defendant's first and twelfth affirmative defenses is GRANTED. (Instrument No. 12).


**B.**

Next, the Court reviews whether Defendant was legally justified to relieve Johnson from duty due to her pregnancy under a bona fide occupational qualification ("BFOQ") of safety. Defendant moves for summary judgment on the grounds that its termination of Johnson was based on a bona fide occupational qualification, which exempts Defendant from Title VII liability. (Instrument No. 11). Plaintiff moves for summary judgment on the same issue, asserting that Johnson's gender or pregnancy is not a BFOQ because it is not reasonably necessary to Defendant's normal enterprise and because substantially all pregnant women would be capable of performing the duties of a Resource Technician. (Instrument No. 12).

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a)(1) (West). To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: "(1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group." *Valdez v. San*

*Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992) (citation omitted). Title VII's prohibition against discrimination on the basis of sex encompasses discrimination on the basis of pregnancy, childbirth, and other sex-related medical conditions. 42 U.S.C.A. § 2000e(k) (West). However, Title VII also provides that an employer may discriminate on the basis of sex in making an employment decision under a bona fide occupational qualification. 29 C.F.R. § 1604.2(a) (2015); *Dothard v. Rawlinson*, 433 U.S. 321, 334 (1977). Where an employer has a facially discriminatory policy in violation of Title VII, it may avoid liability only if it can show that the discrimination is a BFOQ "reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C.A. § 2000-2(e)(1); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 188 (1991). The Supreme Court held in *Johnson Controls* that "unless pregnant employees differ from others in their ability or inability to work, they must be treated the same as other employees for all employment-related purposes." 499 U.S. at 188. The Supreme Court specifically addressed the "so-called safety exception to the BFOQ" and limited such exceptions to instances in which sex or pregnancy actually interferes with the employee's ability to perform and the employee's affected job-related activities fall within the "essence" of the particular business. *Id.*; *Dothard v. Rawlinson*, 433 U.S. 321, 334 (1977); *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 413 (1985).

In *Western Air Lines, Inc. v. Criswell*, 472 U.S. at 412, the Supreme Court adopted the Fifth Circuit's two-part inquiry for evaluating a BFOQ defense in *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976). First, the job qualification must not be "so peripheral to the central mission of the employer's business" that no discrimination could be "reasonably necessary to the normal operation of the particular business." *W. Air Lines, Inc.*, 472 U.S., at 413. The inquiry "adjusts to the safety factor" – "[t]he greater the safety factor, measured by the likelihood

of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications." *Id.* Second, the employer must show either that all or substantially all persons excluded "would be unable to perform safely and efficiently the duties of the job involved" or that it would be "impossible or highly impractical" to deal with them on an individual basis. *Id.* at 414. Therefore, the Court has made clear that an employer could establish a BFOQ defense by showing that "all or substantially all women would be unable to perform *safely and efficiently* the duties of the job involved." *See Johnson Controls, Inc.*, 499 U.S. at 216; *see also W. Air Lines, Inc.*, 472 U.S. at 414; *Dothard v. Rawlinson*, 433 U.S. at 333.

In this case, Defendant concedes that its Pregnancy in the Workplace Policy is facially discriminatory because it purposefully makes adverse employment decisions based on pregnancy. (Instrument No. 11 at 20). Defendant also concedes that its decision to relieve Johnson of her position upon discovering her pregnancy was discriminatory on the basis of sex. (*Id.*). However, Defendant asserts that its discriminatory decision was based upon a BFOQ to protect the safety of the pregnant woman, her unborn child, and the group home residents. (*Id.*). Defendant asserts that Johnson's Resource Technician position required direct care for disabled, elderly, and sometimes aggressive and/or abusive residents, and also required frequent physical bending, pushing, pulling, and lifting, and occasional exposure to toxic cleaning agents. (*Id.*). Defendant asserts that at the time that Johnson was terminated, she was a direct care employee for two residents who had a history of aggression and/or violence, including hitting, kicking, and throwing objects at the Resource Technician. (*Id.*). Defendant asserts that its discriminatory pregnancy policy was based upon a bona fide occupational qualification because the policy sought to eliminate physical risks and protect the pregnant employee and her unborn child. (*Id.*). However, Defendant has not submitted any evidence to prove that all or substantially all pregnant women would be unable to

perform safely and efficiently the duties of a Resource Technician. *See Johnson Controls, Inc.*, 499 U.S. at 216. The Supreme Court specifically addressed "unconceived fetuses" as being neither customers nor third parties whose safety is essential to the defendant's business, and this reasoning extends to the prospective safety of a living fetus as in the instant case. *See Johnson Controls, Inc.*, 499 U.S. at 203. Defendant does not provide any specific evidence to show that Johnson or any other pregnant woman would have been unable to fulfill a Resource Technician's functions safely and effectively.

Defendant points to Johnson's particular medical history and her previous request for "light duty," yet Johnson's previous medical restrictions were lifted when she returned to work on March 23, 2011 and did not recur. (Instrument Nos. 11 at 11; 14 at 8). Defendant's speculations about why Johnson ultimately miscarried are irrelevant to the Court's determination, and Defendant's employees testified that Johnson had no physical work restrictions at the time of her termination. (Instrument Nos. 11 at 11; 14 at 8). Defendant concedes that there was no physical or other indication that Johnson could not carry out the full duties of her position. (Instrument Nos. 11 at 11; 14 at 8). The evidence before the Court indicates that Defendant's Pregnancy in the Workplace Policy and Defendant's termination of Johnson for safety do not constitute a bona fide occupational qualification and thereby violated Title VII's prohibition against sex discrimination. *See Johnson Controls, Inc.*, 499 U.S. 187.

Accordingly, Defendant's motion for summary judgment on the issue of whether a pregnancy woman's safety is a bona fide occupational qualification is DENIED. (Instrument No. 11). Plaintiff's motion for summary judgment is GRANTED in part as to Defendant's eighth and eleventh affirmative defenses. (Instrument No. 12).

### C.

Defendant moves for summary judgment on the grounds that Sharmira Johnson did not mitigate her post-termination damages as required under Title VII and is therefore barred from seeking back pay. (Instrument No. 11 at 22-25). Defendant alleges that Johnson refused Defendant's offer to reinstate her to her prior position after her pregnancy ended, and that Johnson failed to look for work in direct care for several months. (*Id.*). In response, Plaintiff alleges that Johnson did search for work after her termination, and that Johnson's testamentary evidence is equally effective for the purposes of demonstrating mitigation as the documentary evidence in Defendant's possession. (Instrument No. 14 at 20-22).

The Supreme Court has held that an unemployed or underemployed Title VII claimant is subject to the statutory duty to minimize damages and is required to use reasonable diligence in finding other suitable employment. Civil Rights Act of 1964, § 706(g) as amended 42 U.S.C.A. § 2000e-5(g); *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219 (U.S. 1982). Under Title VII, a plaintiff suing for back pay satisfies her duty to mitigate damages so long as she makes a reasonable effort to seek comparable employment. *Marks v. Prattco,* 633 F.2d 1122, 1125 (5th Cir. 1981). The burden of proving that the plaintiff has not exercised diligence in seeking comparable employment rests on the employer. *Id.; Vaughn v. Sabine Cnty.*, 104 F. App'x 980, 984 (5th Cir. 2004). Although a Title VII claimant has a duty to mitigate her damages, she has no obligation to accept employment that is not substantially equivalent to her prior employment in order to minimize damages. *Vaughn v. Sabine Cnty.*, 104 F. App'x at 984. "'Substantially equivalent employment' for purposes of Title VII litigation is that 'employment' which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Id.*

A court evaluates the reasonableness of a Title VII claimant's diligence in light of the individual characteristics of the claimant and the job market. *Id.*; *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1045 (5th Cir.1998) (Title VII pregnancy discrimination case) (citing *Sellers v. Delgado Coll.,* 902 F.2d 1189, 1193 (5th Cir.1990)); *W. v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).

In this case, Defendant alleges that Johnson did not look for work in the direct care field for several months after her termination. (Instrument No. 11 at 22-25). However, Johnson testified at deposition that she sought new work and that she received unemployment benefits from the Texas Workforce Commission between April 2011 and November 2012. (Instrument No. 14 at 21-22). Plaintiff asserts that Johnson's receipt of unemployment benefits indicates that she regularly reported to the Commission and continually sought employment during this period. (*Id.*). Johnson testified that she sought new employment after her termination by Defendant and produced all job search documents in her possession to the EEOC. (Instrument No. 14-3 at 9). Johnson concedes that she misplaced some of the hand-written job search logs she kept over the years, and ultimately decided to become self-employed by becoming a foster parent. (Instrument No. 14 at 20-11, n.12, and 22). In light of these conflicting issues of material fact, this Court cannot determine as a matter of law whether Johnson adequately mitigated her damages.

Defendant also asserts that Johnson is barred from recovery of back pay because she refused Defendant's offer to reinstate her to her prior position as a Resource Technician after her pregnancy ended. (Instrument No. 11 at 22-25). The parties agree that Defendant did offer to rehire Johnson back to an available position after she was no longer pregnant. (Instrument No. 11 at 23). However, the Court notes that Defendant did not remove its Pregnancy in the Workplace Policy until June 2011, after Johnson filed a charge with the E.E.O.C. in May 2011. (Instrument

No. 13 at 13). Furthermore, Plaintiff asserts that Defendant's discriminatory Pregnancy in the Workplace Policy was still in effect when Defendant offered to reinstate Johnson to her prior position as a Resource Technician. (Instrument No. 13 at 13). Defendant asserts that because Johnson refused to return to her position after her miscarriage, Johnson is not eligible to seek back pay. (Instrument No. 11 at 22-25). This Court finds it unreasonable to penalize an employee, previously terminated under a discriminatory policy because of her pregnancy, for not accepting an offer of reinstatement under the same discriminatory policy. *See* Civil Rights Act of 1964, §§ 701 et seq., 706(g), as amended, 42 U.S.C.A. §§ 2000e et seq., 2000e–5(g); *Sellers v. Delgado Coll.*, 902 F.2d 1189 (5th Cir. 1990) ("reasonableness of Title VII claimant's efforts to mitigate damages should be evaluated in light of individual characteristic of claimant and job market"). In this case, Johnson knew that she desired to become pregnant again and therefore would be terminated under the same policy as soon as she succeeded in doing so. (Instrument No. 14 at 22).

The Fifth Circuit has long held that while Title VII requires reasonable diligence in locating employment and mitigating damages, "it does not require that a person remain employed despite dissatisfaction." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132 (5th Cir. 1988) (citing *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1510 (11th Cir. 1987). In this case, Title VII's mitigation provision does not require Johnson to seek reinstatement with Defendant despite her dissatisfaction with Defendant's discriminatory Pregnancy in the Workplace Policy. *Id.* After viewing all available evidence in the light most favorable to Plaintiff, a genuine issue of material fact remains as to whether Sharmira Johnson mitigated her damages and may seek recovery of back pay. As a matter of law, this Court cannot conclude that Johnson failed to mitigate her damages after termination. Additionally, while back pay is an equitable remedy within the

purview of the Court, the factual issue of mitigation is generally one requiring a determination by the trier of fact. *See W. v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 388 (5th Cir. 2003).

Accordingly, Defendant's motion for summary judgment on the issue of Sharmira Johnson's alleged failure to mitigate her damages is **DENIED**. (Instrument No. 11). Plaintiff's motion for summary judgment is **GRANTED in part** as to Defendant's eighth affirmative defense. (Instrument No. 12).

### D.

Defendants concede that there is insufficient factual basis to sustain its second, third, fourth, fifth, sixth, ninth, fifteenth, sixteenth, and seventeenth defenses. (Instrument No. 13). Accordingly, Plaintiff's motion for partial summary judgment is GRANTED IN PART as to these affirmative defenses.

//

//

//

//

//

//

//

//

//

### V.

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is **DENIED (Instrument No. 11)**, Plaintiff's Motion for Partial Summary Judgment is **GRANTED in part** as to Defendant's first, second, third, fourth, fifth, sixth, eighth, ninth, fifteenth, sixteenth, and seventeenth affirmative defenses and **DENIED in part** as to Defendant's tenth affirmative defense. **(Instrument No. 12)**, Defendant's Motion to Strike Plaintiff's Exhibit P is **DENIED (Instrument No. 16)**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 25th day of March, 2015, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**