IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 4:13-CV-2871 |
| UNITED BIBLE FELLOWSHIP MINISTRIES, INC., | § § § § | |
| Defendant. | § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff U.S. Equal Employment Opportunity Commission ("E.E.O.C.") has brought suit against Defendant United Bible Fellowship Ministries, Inc. ("United Bible") under Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). On March 24, 2015, the Court entered default against Defendant. On March 25, 2015, the Court entered an Order denying Defendant's Motion for Summary Judgment and granting Plaintiff's Motion for Summary Judgment as to Defendant's first, second, third, fourth, fifth, sixth, eighth, ninth, eleventh, fifteenth, sixteenth, and seventeenth affirmative defenses. On April 7, 2015, a bench trial was held in the above-styled case. Having considered the evidence in this case and the applicable law, the Court enters the following findings of fact and conclusions of law. Any finding of fact that is more appropriately characterized as a conclusion of law shall be so construed.

# I. FINDINGS OF FACT

Defendant is a 501(c)(3) nonprofit organization that operated a Home and Community Services business through which it provided housing, residential care, vocational and life-skills training to its resident-clients with physical and mental disabilities. Plaintiff E.E.O.C. brought suit on behalf of Sharmira Johnson (then known as Sharmira Bullock), who began working for Defendant as a Resource Technician on October 29, 2010. Defendant paid Johnson a wage of $8.00/hour plus overtime as a rate of $12.00/hour.

On April 12, 2011, Johnson gave Defendant's Program Director Moss ("Moss") a doctor's note advising that Johnson was pregnant. The note listed no medical restrictions on her ability to work and stated that Johnson should not be exempt from working. On April 12, 2011, Moss typed, signed, and handed to Johnson a memo entitled "Relief of Duty Due to Pregnancy." Moss stated in this memo that "in accordance to the Policy of Pregnancy in the Workplace, . . . .you will be relieved of duty pending your pregnancy and that upon your delivery you will be eligible for rehire for any direct care position we have available at that time." Defendant intentionally terminated Johnson's employment according to the policy because Johnson was pregnant. In the Relief of Duty memo terminating Johnson's employment, Defendant stated that she could reapply for an "available" position as a Resource Technician after her pregnancy, thereby offering her conditional reinstatement if she was no longer pregnant. Johnson received no pay from Defendant after April 12, 2011.

Two days following the termination, on April 14, 2011, Johnson miscarried. Johnson experienced significant stress, anguish, and humiliation for a prolonged period of time due to the manner in which she was terminated and the resulting economic hardships. She experienced a period of heavy grief, but began to search for a new job out of necessity. Johnson refused to

reapply for a position with Defendant. Defendant's Pregnancy in the Workplace policy was still in effect, and Johnson wanted to become pregnant again. In fact, she had two subsequent pregnancies that would have caused her to be fired yet again under the same discriminatory policy. As a result of her termination, Johnson became highly distressed over how she would support herself and her family. She faced serious financial difficulties which caused her emotional harm, inconvenience, and mental anguish. She was unable to pay several outstanding loans, including her car loan.

On May 10, 2011, while unemployed, Johnson filed a complaint alleging sex and pregnancy discrimination with the E.E.O.C. Johnson charged that Defendant had violated Title VII of the Civil Rights Act of 1964 ("Title VII") in terminating her employment because she was pregnant. Johnson was performing her duties satisfactorily and had no medical restrictions on her ability to work.

Johnson lost $24,564.47 in back wages and overtime, along with prejudgment interest, as calculated below.

|         | Wages     | Overtime | % Penalty | $ Penalty | Total     |
|---------|-----------|----------|-----------|-----------|-----------|
| 4/2011  | $665.00   | $60.00   | .25%      | $1.81     | $726.51   |
| 5/2011  | $1,280.00 | $120.00  | .19%      | $2.66     | $1,402.66 |
| 6/2011  | $1,280.00 | $120.00  | .18%      | $2.52     | $1,402.52 |
| 7/2011  | $1,280.00 | $120.00  | .19%      | $2.66     | $1,402.66 |
| 8/2011  | $1,280.00 | $120.00  | .10%      | $1.40     | $1,401.40 |
| 9/2011  | $1,280.00 | $120.00  | .11%      | $1.54     | $1,401.54 |
| 10/2011 | $1,280.00 | $120.00  | .12%      | $1.68     | $1,401.68 |
| 11/2011 | $1,280.00 | $120.00  | .11%      | $1.54     | $1,401.54 |

| 12/2011 | $1,280.00 | $120.00 | .12% | $1.68 | $1,401.68 |
| --- | --- | --- | --- | --- | --- |
| 1/2012 | $1,280.00 | $120.00 | .12% | $1.68 | $1,401.68 |
| 2/2012 | $1,280.00 | $120.00 | .16% | $2.24 | $1,402.24 |
| 3/2012 | $1,280.00 | $120.00 | .19% | $2.66 | $1,402.66 |
| 4/2012 | $1,280.00 | $120.00 | .18% | $2.52 | $1,402.52 |
| 5/2012 | $1,280.00 | $120.00 | .20% | $2.82 | $1,402.82 |
| 6/2012 | $1,280.00 | $120.00 | .19% | $2.66 | $1,402.66 |
| 7/2012 | $1,280.00 | $120.00 | .19% | $2.66 | $1,402.66 |
| 8/2012 | $1,280.00 | $120.00 | .18% | $2.52 | $1,402.52 |
| 9/10/2012 | $1,280.00 | $120.00 | .18% | $2.52 | $1,402.52 |
| TOTAL | | | | | $24,564.47 |

Johnson searched for a new job after her termination up until the time she became re-employed. Johnson made ongoing efforts throughout the period of her unemployment to locate substantially equivalent employment by submitting job applications online, through the Texas Workforce Commission, and in person. Johnson found substantially equivalent full-time employment on September 10, 2012. Her job search expenses totaled approximately $200.00 in transportation costs.

Defendant had a contract with the Texas Department of Aging and Disability Services ("DADS") worth $100,000 or more for the operation of its Home and Community Services business. As such, Defendant was required to comply with all federal anti-workplace discrimination laws, including Title VII. Moss was solely responsible for keeping up-to-date with changes in laws, rules, and regulations pertaining to Defendant's contract with DADS. The

E.E.O.C. filed this action on September 30, 2013 seeking: (1) a permanent injunction against Defendant's practice of terminating employees on the basis of sex/pregnancy; (2) a court order mandating that Defendant institute policies and practices to prevent future sex-based discrimination (such as workforce training and anti-discrimination policies); (3) an award to Johnson of back pay with interest; (4) a court order mandating that Defendant compensate Johnson for the pecuniary and non-pecuniary losses she suffered as a result of Defendant's discrimination; (5) a court order mandating that Defendant pay Johnson punitive damages, and (6) an award to the Commission for the costs of this action. On March 24, 2015, the Court entered default against Defendant. On March 25, 2015, the Court entered an Order denying Defendant's Motion for Summary Judgment and granting Plaintiff's Motion for Summary Judgment as to Defendant's first, second, third, fourth, fifth, sixth, eighth, ninth, eleventh, fifteenth, sixteenth, and seventeenth affirmative defenses. On March 26, 2015, the Court set the case for a bench trial on April 7, 2015 on the issue of damages.

The E.E.O.C. incurred $1,662.38 in deposition and summons fees as calculated below:

| | |
|---|---|
| Summons Fee | $95.00 |
| Madeline Glass Deposition | $636.75 |
| Delores Moss Deposition | $702.70 |
| Sharmira Johnson Deposition | $227.93 |
| **TOTAL:** | **$1,662.38** |

## II. CONCLUSIONS OF LAW

This lawsuit was filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). The purpose of awarding damages in employment discrimination cases is to make the victim "whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co.*

5

*v. Moody*, 422 U.S. 405, 418 (1975). Since Defendant's liability is established, the Court need only decide an appropriate award of back pay, damages, and other relief.

### A. Back Pay & Prejudgment Interest

Plaintiff E.E.O.C. is the prevailing party in this lawsuit. Title VII of the Civil Rights Act of 1964 authorizes back-pay relief to a prevailing plaintiff. 42 U.S.C.A. § 2000e-5(g) (West). There is a strong presumption in favor of back-pay awards to victims of employment discrimination under Title VII. *Albemarle Paper Co.*, 422 U.S. at 421 n.12 (quoting *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 178 (2d Cir. 1965)). While back-pay is not automatic or mandatory, it is an integral part of the "primary objective" of Title VII to deter unlawful employment practices. *Albemarle*, 422 at 415, 417. Thus, a federal district court must carefully articulate its reasons for declining to award back pay. *Id.* at 422 n.14. The Fifth Circuit has held that in Title VII cases that back pay "should include more than 'straight salary'. . . [i]nterest, overtime, shift differentials, and fringe benefits such as vacation and sick pay are among the items which should be included in back pay." *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 262-63 (5th Cir. 1974); *see also Bowe v. Colgate-Palmolive Co.*, 489 F.2d 896 (7th Cir. 1973) (vacation, sick pay, and bonus); *United States v. City of Warren, Mich.*, 138 F.3d 1083, 1096-97 (6th Cir. 1998) ("lost overtime [is a] well-established part of [a] back pay award under Title VII" and does not constitute a windfall judgment) (quoting *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983)).

"Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. U.S.*, 479 U.S. 305, 311

n.2 (1987); *see also General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983). Thus, prejudgment interest is an element of complete compensation. *General Motors*, 461 U.S. at 655-56. Where an action arises under federal law, "it is within the discretion of the district court to select an equitable rate of prejudgment interest." *Raspanti v. Caldera*, 34 F. App'x 151 (5th Cir. 2002) (quoting *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991)). Plaintiff has shown by a preponderance of the evidence that Sharmira Johnson incurred $24,564.47 in lost wages as a result of Defendant's discrimination, from her termination on April 12, 2011 to September 10, 2012, when Johnson became re-employed in substantially equivalent employment.

### B. Mitigation of Damages

A Title VII claimant is subject to the statutory duty to minimize damage and is required to use reasonable diligence in finding other suitable employment. 42 U.S.C.A. § 2000e-5(g) (West); *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982); *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir. 1979). Although a Title VII claimant has a duty to mitigate her damages, she has no obligation to accept employment that is not substantially equivalent to her prior employment in order to minimize damages. *Vaughn v. Sabine Cnty.*, 104 F. App'x 980, 984 (5th Cir. 2004). "'Substantially equivalent employment' for purposes of Title VII litigation is that 'employment' which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Id.*

Plaintiff has shown by a preponderance of the evidence that Johnson minimized her damages following her termination by exercising reasonably diligent efforts to locate

substantially equivalent employment. Johnson's efforts to locate employment were briefly interrupted by Johnson's two ectopic pregnancies, and those interruptions do not operate to reduce her back pay award. To mitigate her damages, Johnson was not required to seek or accept re-employment with Defendant, whose policy mandated that she would be terminated again if she became pregnant. Defendant's conditional offer of reinstatement was merely an invitation to reapply for a possible open position, and thus did not operate to cut off Johnson's back pay award. Therefore, Johnson satisfied her statutory duty to mitigate and is entitled to a full award of back pay totaling **$24,564.47**. In addition, Plaintiff has shown by a preponderance of the evidence that Johnson's efforts to mitigate her damages resulted in $200.00 in out-of-pocket transportation expenses. As authorized by 42 U.S.C. § 2000e-5(g)(1), the Court awards these costs to Johnson in addition to back pay and other damages.

### C. Collateral Source Payments

District courts are empowered to grant "such legal or equitable relief as may be appropriate to effectuate the purposes" of anti-discrimination statutes, *i.e.*, to discourage discrimination and compensate its victims. *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 209 (5th Cir. 1986) (quoting 29 U.S.C.A. § 626(b) (West)). Thus, in the Fifth Circuit, the District Court has discretion to deduct collateral sources of payments such as unemployment benefits from a back pay award. *See Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir. 1988); *Guthrie*, 803 F.2d at 209.

### D. Compensatory and Punitive Damages

Under the Civil Rights Act of 1991, a plaintiff may recover compensatory and punitive damages for a defendant's unlawful discrimination. 42 U.S.C. §§ 1981a(b)(1), 1981a(b)(3) (West). Compensatory damages may be awarded to compensate a plaintiff for pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. 42 U.S.C.A § 1981a(b)(3) (West). An award of compensatory damages may be made even where there is a nominal back pay award. *See E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 469 (5th Cir. 2013).

Punitive damages are recoverable where a plaintiff shows that the defendant engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of the claimant. 42 U.S.C.A. § 1981a(b)(1) (West). An award of punitive damages may be made independent of an award of back pay and/or compensatory damages. *See Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 165 (5th Cir. 2008); *E.E.O.C. v. E.I. DuPont de Nemours & Co.*, 480 F.3d 724 (5th Cir. 2007). It is not necessary for a plaintiff to prove that she has an extraordinarily egregious case in order to get punitive damages; intentional violations are sufficient for punitive damages. *Abner v. Kansas City S. R. Co.*, 513 F.3d at 161. Plaintiff must merely demonstrate by a preponderance of the evidence that the employer knew that it may have been acting in violation of federal law. *Id.; Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 549 (1999).

In this case, Defendant's unlawful employment practices, including its Pregnancy in the Workplace Policy and the application of the policy to Johnson, were intentional and perpetrated with malice or reckless indifference to Johnson's federally protected rights. Although Defendant's DADS contract specifically required Defendant to comply with Title VII and also to understand the requirements of the statute, Defendant recklessly failed to comply with Title VII.

9

Plaintiff has proven by a preponderance of the evidence that as a result of Defendant's discriminatory actions, Johnson suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, such that an award of compensatory damages should be entered for Johnson. Plaintiff has also proven by a preponderance of the evidence that Defendant acted with malice or reckless indifference to Johnson's federally-protected rights, such that an award of punitive damages should be entered. Therefore, the Court finds that an award of $50,000 to Johnson in punitive damages is appropriate and shall be entered.

### E. Injunctive Relief

Injunctive relief is mandatory in the wake of a Title VII violation absent clear and convincing proof of no reasonable probability of further noncompliance with the law. *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 469 (5th Cir. 2013) (quoting *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 338 n.51 (5th Cir. 2012)).

In this case, Defendant is no longer in business. However, if Defendant reestablishes the same or a similar business within the next four (4) years, Defendant is enjoined from engaging in employment discrimination and is required to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees and which eradicate the effects of Defendant's past and present unlawful employment practices, including pregnancy discrimination. These policies, practices, and programs shall be monitored by the E.E.O.C., and Defendant shall be required to comply with the E.E.O.C.'s oversight of same.

### F. Plaintiff's Costs

Under 28 U.S.C.A. §1920, the Court may, in its discretion, assess litigation costs, including filing fees and deposition costs, against Defendant and award these to Plaintiff as the prevailing party. *See also Breaux v. City of Garland*, 205 F.3d 150, 164 (5th Cir. 2000); Fed. R. Civ. P. 54(d). In accordance with 28 U.S.C.A. §1924, "[b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." The E.E.O.C. has complied with all requirements of the relevant statutes by filing an appropriate Bill of Costs and affidavit. The Court finds that the E.E.O.C. is entitled to recover its costs in this litigation, which it has shown to total $1,662.38.

The Clerk shall enter this Order and provide a copy to all parties.
**SIGNED** on this the 18th day of May, 2015, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**